**OUTTEN & GOLDEN LLP**
Justin M. Swartz (JS 7989)
Linda A. Neilan (LN 4095)
Rachel Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| **ARTURO REYES, BRYON GOINS and ARMANDO DE LA FUENTE PERALTA, on behalf of themselves and all others similarly situated,** |
| **Plaintiffs,** |
| **-against-** |
| **BUDDHA-BAR NYC; LITTLE REST TWELVE, INC.; NINA ZAJIC; DAVID KAY; and ABDUL RAHMAN EL JASTIMI a/k/a PETER JASTIMI,** |
| **Defendants.** |

**08 Civ. 2494 (DF)**

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iv

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND FACTS AND NEGOTIATIONS .................................................................... 2

    I.    Procedural History ..................................................................................................... 2

    II.   Discovery ................................................................................................................... 3

    III.  Settlement Negotiations ............................................................................................. 3

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION .............................. 4

    I.    The Settlement Fund .................................................................................................. 4

    II.   Releases ...................................................................................................................... 4

    III.  Eligible Employees .................................................................................................... 4

    IV.  Allocation Formula ................................................................................................... 5

    V.   Attorneys' Fees, Litigation Costs, and Service Awards ................................................ 5

    VI.  Settlement Claims Administration .............................................................................. 5

         A.   Mailing ............................................................................................................ 5

         B.   Results of the Mailing ..................................................................................... 6

    VII. Injunctive Relief ........................................................................................................ 6

ARGUMENT .............................................................................................................................. 7

    I.    The Settlement Class Meets the Legal Standard for Class Certification ...................... 7

         A.   Numerosity ...................................................................................................... 9

         B.   Commonality ................................................................................................... 9

         C.   Typicality ...................................................................................................... 10

         D.   Adequacy of the Named Plaintiffs ................................................................ 11

         E.   Certification is Proper Under Rule 23(b)(3) ................................................. 12

       1.     Common Questions Predominate ................................................................ 12

       2.     A Class Action is a Superior Mechanism .................................................. 13

II.    The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects ........................................................................................................ 15

   A.  Procedural Fairness Considerations Support Approving this Settlement Class ...... 15

   B.  The Second Circuit's Standard for Examining Substantive Fairness of Class Action Settlements Favors Granting Final Approval ....................................................... 16

       1.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ..................................................................................................... 17

       2.     The Reaction of the Class Has Been Positive .............................................. 18

       3.     Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).......................................................... 18

       4.     Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) ......................................................................................................... 183

       5.     Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6) ..................................................................................... 20

       6.     Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7) ..................................................................................................... 21

       7.     The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) 21

III.   Approval of the  FLSA Settlement is Appropriate under Federal Law ......................... 24

CONCLUSION ............................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)........................................................................................8,12,14

*Ansoumana v. Gristedes Operating Corp.*,
 201 F.R.D. 81 (S.D.N.Y. 2001) ....................................................................24

*In re Austrian & German Bank Holocaust Litig.*,
 80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................... passim

*In re BankAmerica Corp. Securities Litig.*,
 210 F.R.D. 694 (E.D. Mo. 2002) ..................................................................15,16

*Brooks v. Am. Export Indus., Inc.*,
 No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .........................22

*Brown v. Title Ticor Ins. Co.*,
 982 F.2d 386 (9th Cir. 1992) ........................................................................12

*Cagan v. Anchor Sav. Bank FSB*,
 No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450 (E.D.N.Y. May 17, 1990).........................22

*City of Detroit v. Grinnell Corp.*,
 495 F.2d 448 (2d Cir. 1974)........................................................................ passim

*Consol. Rail Corp. v. Town of Hyde Park*,
 47 F.3d 473 (2d Cir. 1995)............................................................................9

*D'Amato v. Deutsche Bank,*
 236 F.3d 78 (2d Cir. 2001)............................................................................15

*Denney v. Deutsche Bank AG*,
 443 F.3d 252 (2d Cir. 2006)........................................................................7,11

*Dziennik v. Sealift, Inc.*,
 No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701 (E.D.N.Y. May 29, 2007).........................11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
 No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)...................15,18

*Faith v. Little Rest Twelve Inc.*, 08-105623 (N.Y. Sup. Ct.)..........................................................14

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)..................................................................................... passim

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)...................................................................................................8

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)..............................................................................................................9

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2009 U.S. Dist. LEXIS 14391 (S.D.N.Y. Feb. 23, 2009) ................. passim

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968)...............................................................................................13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................................8,14

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
239 F.R.D. 363 (S.D.N.Y. 2007) .......................................................................................13

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969).....................................................................................19

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)...............................................................................................23

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
109 F.R.D. 391 (S.D.N.Y. 1986) .........................................................................................9

*Lenahan v. Sears, Roebuck & Co.*,
No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006)....................................13

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) .........................................................................................24

*Maley v. Dale Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).................................................................................18

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir. 1997)............................................................................................9,10

*Martens v. Smith Barney Inc.*,
181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................................................11

*McBean v. City of New York*,
228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................................................13

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ..............................................................................24

*Mohney v. Shelly's Prime Steak*,
   06 Civ. 4620 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009) ............ passim

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972)...................................................................................22

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ............................................................................12

*Officers for Justice v. Civil Service Com.*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................22

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815, 846-48 (1999) ................................................................................12

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................19

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)....................................................................................9

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ...........................................................................8,9

*RMED Int'l, Inc. v. Sloan's Supermkts, Inc.*,
   No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003)...........................18

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)...................................................................................10

*Ross v. A.H. Robbins, Inc.*,
   700 F. Supp. 682, 684 (S.D.N.Y. 1988)...................................................................18

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)....................................................................................2

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
   No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004)........................23

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31, 2008).......................15

*Torres v. Gristede's Operating Corp.*,
   No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006) .......................13

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .........................11

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ...................................................................................................9

*Trinidad v. Breakaway Courier Sys., Inc.*,
   No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007) ............................11

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) ....................18,19

*In re Visa Check/MasterMoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001) ............................................................................................12,13,14

*Wagner v. NutraSweet Co.*,
   95 F.3d 527 (7th Cir. 1996) ........................................................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ....................................................................................................15,16

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .............................................18

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008) ........................................................................................18

## STATUTES

29 U.S.C. § 216(b) ...........................................................................................................................2,24

N.Y. Lab. Law Article 6, §§ 190 *et seq.* ................................................................................... passim

N.Y. Lab. Law Article 19, §§ 650 *et seq.* ................................................................................. passim

## FEDERAL RULES

Fed. R. Civ. P. 23 ........................................................................................................................ passim

## TREATISES

*Manual for Complex Litigation, Third* (1995) ...............................................................................15

*Newberg on Class Actions* (4th ed. 2002) .......................................................................................8

## PRELIMINARY STATEMENT

The parties' settlement of this wage and hour class and collective action, which provides for monetary relief of $710,000 plus interest and meaningful injunctive relief, is ready for final Court approval.  The settlement resolves all of Plaintiffs' and Class Members' claims and, Plaintiffs believe, will set an example for other restaurant owners in New York City.  It also satisfies all of the criteria for final approval under federal law.

On January 29, 2009, the Court took the first step in the settlement approval process by preliminarily certifying the class action, appointing Outten & Golden LLP as Class Counsel, directing that notice be served on Class Members, and setting April 7, 2009 as the date for the final fairness hearing.  (Declaration of Linda A. Neilan in Support of Plaintiffs' Motion for Final Approval of Settlement ("Neilan Dec."),[1] ¶ 13; Ex. D (Preliminary Approval Order).)  On March 26, 2009, the Court adjourned the fairness hearing to May 27, 2009, and authorized the parties to send out a corrected notice ("Corrected Notice") to all Class Members.  (Neilan Dec. ¶¶ 16-17; Ex. F (March 26, 2009 Order).)

The Claims Administrator has mailed the Corrected Notice to 437 Class Members, and remailed the Notice to all Class Members for whom an updated address could be located. (Neilan Dec. ¶¶ 18-19; Ex. H (Declaration of Mark Patton Re: Settlement Administration ("Patton Dec.").)  Accordingly, the members of the class have been notified of the terms of the settlement, the monetary and injunctive relief, the allocation formula, and their right to opt out of or object to the settlement.  Not a single member of the class objected to the settlement or opted out of it.  (Neilan Dec. ¶¶ 19-20; Ex. H (Patton Dec.).)  With such overwhelming and

---

[1]      Unless otherwise indicated, all exhibits are attached to the Declaration of Linda A. Neilan.

unequivocal support, and for the reasons stated below, the settlement should be granted final approval.

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Plaintiffs' Motion for Final Approval"), pursuant to Federal Rule of Civil Procedure 23(e), for an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Settlement and Release ("Settlement Agreement") attached as Exhibit C to Neilan Dec.; and (3) approving the FLSA Settlement.

## BACKGROUND FACTS AND NEGOTIATIONS

### I.      Procedural History

Plaintiffs are former and current servers, runners, bussers, cocktail waiters, bartenders, and barbacks at Buddha-Bar NYC ("Buddha-Bar"), a restaurant owned and/or operated by Little Rest Twelve, Inc., Nina Zajic, David Kay, and Abdul Rahman el Jastimi a/k/a Peter Jastimi, the General Manager (collectively, with Buddha-Bar, "Defendants").

On March 12, 2008, Arturo Reyes, Bryan Goins, and Armando de la Fuente Peralta ("Named Plaintiffs") commenced this action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under 29 U.S.C. § 216(b), bringing claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  (Neilan Dec. ¶ 3; Ex. A (Class Action Complaint).)  Sixteen other workers have joined this case as "opt-in" plaintiffs under the FLSA.  (Neilan Dec. ¶ 4.)

Plaintiffs alleged that Defendants violated the FLSA and the NYLL by: (1) failing to pay their hourly service workers the full minimum wage; (2) failing to pay a full overtime premium

for the hours that they worked over 40 in a workweek; (3) failing to pay for time worked before and after their scheduled shifts; (4) misappropriating tips that Plaintiffs earned and distributing those tips to employees, such as managers and sushi chefs, who are not entitled to tips; (5) misappropriating mandatory gratuities or "service charges" that Defendants charged their customers who held events at Buddha-Bar and which these customers reasonably believed were meant for the servers; (6) failing to compensate Plaintiffs for uniform-related expenses; (7) failing to pay Plaintiffs who worked more than 10 hours spread-of-hours pay; and (8) failing to pay Plaintiffs who reported to work, but were sent home, call-in pay.  (Neilan Dec. ¶ 3; Ex. A (Class Action Complaint).)

## II.    <u>Discovery</u>

The parties engaged in substantial informal discovery before agreeing to resolve this case.  Plaintiffs interviewed 27 workers to determine their hours worked, their wages, the duties of individuals who received tips, and other relevant information.  (Neilan Dec. ¶¶ 5-6.)  Plaintiffs obtained supportive declarations from 7 workers.  (*Id.*)

In addition, Plaintiffs obtained, reviewed, and analyzed hard-copy documents and electronic data including, but not limited to, Defendants' payroll data, time records, wage and hour policies, tip distribution policies, and Buddha-Bar event contracts.  (Neilan Dec. ¶ 7.)

## III.   <u>Settlement Negotiations</u>

In September 2008, the parties agreed to participate in private, non-binding mediation in order to resolve this case.  They hired Carol Wittenberg ("Ms. Wittenberg") of JAMS, an experienced mediator in employment law.  The parties attended two mediation sessions, on October 30, 2008 and November 7, 2008, through which they reached a settlement and signed a Memorandum of Understanding.  (Neilan Dec. ¶ 9.)  On December 22, 2008, the parties

3

executed a Joint Stipulation of Settlement and Release ("Settlement Agreement").  (*Id.* ¶ 10; Ex. B (Settlement Agreement).)

On December 22, 2008, Plaintiffs filed their Motion for Preliminary Approval of the Settlement, Conditional Approval of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Plaintiffs' Proposed Notice and Settlement Procedure.  The Court granted Plaintiffs' Motion on January 29, 2009.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

**I.     The Settlement Fund**

The Settlement Agreement creates a fund of $710,000 to settle this case ("the Fund"). The Fund covers attorneys' fees and costs, class members' awards, interest, service payments, $10,000 of administration fees and costs, and taxes.  (Ex. B (Settlement Agreement) ¶ 3.1(A).) None of the Fund reverts to Defendants and payroll taxes do not come from the Fund.  (*Id.* ¶¶ 3.1(C), 3.5(C)).

**II.    Releases**

The Settlement Agreement provides that every class member who does not timely opt out of the settlement will release his or her NYLL wage and hour claim.  (*Id.* ¶¶ 2.4, 4.1(A).)  Class members will release FLSA claims by endorsing their settlement checks.  (*Id.* ¶¶ 2.5, 4.1(B).)

**III.   Eligible Employees**

There are two partially overlapping categories of workers entitled to receive payments from the Fund, the "FLSA Class" and the "Rule 23 Class."  The FLSA Class consists of individuals who have submitted written "consents to join" indicating their desire to join the FLSA component of the case and/or individuals who execute an FLSA release by endorsing their settlement checks.  (Ex. B (Settlement Agreement) ¶ 2.5.)  The

Rule 23 Class consists of employees who worked for Defendants within the six-year
NYLL statute of limitations period and who do not opt-out pursuant to the Settlement
Agreement.  (*Id.* ¶ 2.4.)

## IV.   Allocation Formula

According to the Settlement Agreement, the FLSA class members and the Rule 23 class
members who do not opt out of the settlement will be paid pursuant to an allocation formula
based on the number of pay periods they worked.  (Ex. B (Settlement Agreement) ¶ 3.4(B).)
Settlement awards will be allocated 50% to wages and 50% to interest and liquidated damages.
(*Id.* ¶¶ 3.5(A).)  Defendants are responsible for state and federal payroll taxes.  (*Id.* ¶ 3.5(C).)

## V.   Attorneys' Fees, Litigation Costs, and Service Awards

Consistent with the Settlement Agreement, Plaintiffs' counsel has filed a Motion for
Approval of Attorneys' Fees and Reimbursement of Expenses and a Motion for Approval of
Class Representatives' Service Awards simultaneously with this Motion.

## VI.   Settlement Claims Administration

Pursuant to the Settlement Agreement, Settlement Services, Inc. of Tallahassee, Florida
has served and will continue to serve as the settlement administrator ("Claims Administrator").
Settlement Services, Inc. has significant experience administering class action settlements,
including settlements of wage and hour class and collective actions.  (Neilan Dec. ¶¶ 15, 19; Ex.
H (Patton Dec.).)  *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2009 U.S. Dist.
LEXIS 14391, at *6 (S.D.N.Y. Feb. 23, 2009) (finding SSI's prices and process reasonable).

### A.   Mailing

On February 27, 2009, the Claims Administrator mailed the Notice to the list of class
members provided by Defendants.  (Neilan Dec. ¶ 14; Ex. H (Patton Dec.) ¶ 4.)  Following the

mailing, the parties discovered that hundreds of class members' names had been inadvertently left off the class list.  Consequently, on March 23, 2009, we wrote to the Court requesting that it adjourn the Fairness Hearing scheduled for April 7, 2009 and the deadline for Plaintiffs to file their Final Approval Motion and approve the mailing of a corrected Notice of the Class Action Settlement ("Corrected Notice").  (Neilan Dec. ¶ 16.)  The Court granted Plaintiffs' requests on March 26, 2009.  (*Id*. ¶ 17.)

On April 3, 2009, the Claims Administrator mailed the Corrected Notice to all 437 Class Members.  (Neilan Dec. ¶¶ 18-19; Ex. H (Patton Dec.) ¶¶ 5-6.)  Of the 437 Notices that the Claims Administrator sent out, 91 Notices were returned as undeliverable.  (Ex. H (Patton Dec.) ¶ 7.)  The Claims Administrator attempted to obtain updated addresses from a locator service and re-mailed the Notice to the addresses provided by the locator service.  The Claims Administrator re-mailed approximately 38 Notices.  The Claims Administrator could not find updated addresses for 53 Class Members.  (*Id*.)

In addition, the Claims Administrator received approximately 7 Notices from the U.S. Postal Service with forwarding addresses.  The Claims Administrator re-mailed the Notices to the new addresses.  (*Id*. ¶ 8.)

### B.     Results of the Mailing

No Class Members has opted out of or objected to the settlement.  (*Id*. ¶ 9.)

## VII.   Injunctive Relief

The Parties agreed that, subject to Court approval, the following injunctive relief will remain in effect for two years from the date of the execution of the Settlement Agreement:

(1)     Defendants will not require that workers at Buddha-Bar share tips with general managers, floor managers, or anybody with supervisory authority, and will prohibit general managers, floor managers, or anybody with supervisory authority from sharing in a tip pool;

(2)     Defendants will comply with the law with respect to call-in pay;

(3)     Defendants will comply with the law with respect to spread-of-hours pay;

(4)     Defendants will comply with the law with respect to the proper rate of overtime under the Fair Labor Standards Act;

(5)     Defendants will provide workers with uniforms at no cost;

(6)     Defendants will comply with the law with respect to the laundering and maintenance of uniforms;

(7)     Defendants will post notices regarding the requirements of the Fair Labor Standards Act and the New York Labor Law; and

(8)     Defendants will not retaliate against any workers for their participation in this Litigation and/or Settlement.

(Ex. C (Settlement Agreement) ¶ 3.6(A).)

## **ARGUMENT**

## I.      **The Settlement Class Meets the Legal Standard for Class Certification**

When faced with a proposed class settlement, the Court must examine whether the settlement class is certifiable.  *Denney v. Deutsche Bank AG,* 443 F.3d 252, 270 (2d Cir. 2006); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005).   On January 29, 2009, the Court preliminarily certified the settlement class finding that "the proposed Settlement Agreement was within the range of possible settlement approval;" it was "arrived at as a result of extensive arm's length negotiations;" and that the assistance of Ms. Wittenberg "reinforce[d] that the Settlement Agreement [was] non-collusive."  (Ex. D (Preliminary Approval Order) ¶¶ 2-4.)

The Court should certify the settlement class for the NYLL claims because all of the certification requirements for settlement purposes are met and Defendants consent to certification for settlement purposes.  (Ex. C (Settlement Agreement) ¶ 2.2.)  Plaintiffs

respectfully request that the Court certify the following Class for purposes of effectuating the

settlement:

> all persons who have worked as servers, runners, bussers, cocktail waiters,
> bartenders, and/or barbacks at Buddha-Bar NYC at any time between
> April 1, 2006 and October 31, 2008.

This Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality and

adequacy of representation, and at least one of the subsections of Rule 23(b), *see Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1019 (9th Cir. 1998); *Newberg on Class Actions* § 11:27 (4th ed. 2002) ("*Newberg*") (citing *In re*

*Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are

met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

> (1)     the class is so numerous that joinder of all members is
>         impracticable;
>
> (2)     there are questions of law or fact common to the class;
>
> (3)     the claims or defenses of the representative parties are
>         typical of the claims or defenses of the class; and
>
> (4)     the representative parties will fairly and adequately protect
>         the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class
> predominate over any questions affecting only individual
> members, and that a class action is superior to other available
> methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction,

and courts are to adopt a standard of flexibility" in evaluating class certification.  *Reade-Alvarez*

*v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

       **A.**    **Numerosity**

       Plaintiffs easily satisfy the numerosity requirement because there are 437 Class Members. (*See* Neilan Dec. ¶ 18.)  The numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members."  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  A proposed Class with 437 members easily satisfies numerosity.

       **B.**    **Commonality**

       The proposed Class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  The proper question is whether there is a "unifying thread" among the claims to warrant class certification.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  *Frank*, 228 F.R.D. at 181 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992)).

       This case involves numerous common issues.  Primarily, the Named Plaintiffs and all Class Members raise common issues all stemming from the same source – that Defendants violated wage and hour laws.  Specifically, Plaintiffs argue that Defendants unlawfully failed to pay Plaintiffs the full minimum wage, a full overtime premium for the hours that they worked

over 40 in a workweek, and for time worked before and after their scheduled shifts; misappropriated tips that Plaintiffs had earned and distributed those tips to employees, such as managers and sushi chefs, who are not entitled to tips, and misappropriated mandatory gratuities or "service charges" that Defendants charged their customers who held events at Buddha-Bar and which these customers reasonably believed were meant for the servers; failed to compensate Plaintiffs for uniform-related expenses; failed to pay Plaintiffs who worked more than 10 hours spread-of-hours pay; and failed to pay Plaintiffs who reported to work, but were sent home, call-in pay.  (Ex. A (Class Action Complaint).)

These alleged wage and hour violations are a common set of operative facts stemming from corporate policies that affected the Class Members in the same way.  Because Plaintiffs' claims present common operative facts and present common questions of law, the commonality factor is met.  *See Mohney v. Shelly's Prime Steak*, 06 Civ. 4620 (PAC), 2009 U.S. Dist. LEXIS 27899, at **10-11 (S.D.N.Y. Mar. 31, 2009).

### C. <u>Typicality</u>

Rule 23 requires that the claims of the representative parties be typical of the claims of the Class.  "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members."  *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the Named Plaintiffs and the Class.  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Courts evaluate typicality "with reference to the company's actions, not

with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.,* No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the basis for the Rule 23 Class Members' claims. The Named Plaintiffs shared the same job titles and had the same job duties as the Class Members. They also suffered the same injuries as did the Class Members – Defendants' failure to properly pay them correct minimum wages, the full amount of tips that they earned, and overtime for all hours worked. Accordingly, the typicality factor is satisfied. *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at *11; *Frank*, 228 F.R.D. at 182.

### D.   **Adequacy of the Named Plaintiffs**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at **18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney,* 443 F.3d at 268). "'[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 U.S. Dist. LEXIS 38701, at *19 (E.D.N.Y. May 29, 2007) (quoting *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998)).

There is no evidence of conflicting interests between the Named Plaintiffs and the rest of the Class; their interests are sufficiently aligned with those of the rest of the Class. Thus, the adequacy requirement is also met.

### E.    Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact not only be present, but "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.  That Plaintiffs easily meet the Rule 23(a) criteria is a strong indicator that Rule 23(b)(3) is satisfied. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

Certification under Rule 23(b)(3) permits Class Members to opt out of the settlement and preserve their right to seek damages independently.  *Cf. Brown v. Title Ticor Ins. Co.*, 982 F.2d 386, 392 (9th Cir. 1992).  This approach protects Class Members' due process rights, and is consistent with the Supreme Court's decision in *Ortiz v. Fibreboard Corp.*, which explains that due process requires an opportunity to opt out of significant monetary relief.  527 U.S. 815, 846-48 (1999).

### 1.    Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139.  Simply because a defense "'may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones.'" *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (quoting *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the Class are unified by common factual allegations: all Class Members were subject to Defendants' wage and hour violations, including requiring them to pay tips to ineligible employees, failing to pay proper overtime wages for all hours worked, failing to pay for off-the-clock work, failing to pay for uniform expenses, and failing to keep accurate time records. They are also unified by a common legal theory – that Defendants' wage and hour policies violate the NYLL. *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at *12; *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007); *Torres v. Gristede's Operating Corp.,* No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *52 (S.D.N.Y. Sept. 28, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages").

The only individualized issues in this case pertain to the calculation of damages. However, individualized damages calculations do not defeat the Rule 23(b)(3) predominance requirement. *See Frank*, 228 F.R.D. at 183 (collecting cases holding that calculation of damages in overtime litigation does not impact the predominance analysis); *Lenahan v. Sears, Roebuck & Co.*, No. 02-0045, 2006 U.S. Dist. LEXIS 60307, at *23 (D.N.J. July 10, 2006) (same).

## 2.    A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule

23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: whether individual Class Members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Fed. R. Civ. P. 23(b)(3).[2]

Here, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions.  Regarding the forum, concentrating the litigation in this Court is desirable because the allegedly wrongful conduct occurred within the jurisdiction of this Court. Further, Plaintiffs are aware of only one lawsuit filed by a Class Member that is currently pending.[3]

Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.  *See Mohney*, 2009 U.S. Dist. LEXIS 27899, at *12; *Hanlon*, 150 F.3d at 1023 (9th Cir. 1998) (class action superior where individual lawsuits would "unnecessarily burden the judiciary [and] prove uneconomic for potential plaintiffs [because] litigation costs would dwarf [each plaintiff's] potential recovery").  In sum, certifying a class action here is the most suitable mechanism to fairly, adequately, and efficiently resolve Class Members' claims.

---

[2]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement.  *See Amchem Prods.*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement.").  Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 140 (internal quotation marks omitted).

[3]     That case is *Faith v. Little Rest Twelve Inc.*, 08-105623 (N.Y. Sup. Ct.).

## II.   The Proposed Settlement is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects

Rule 23(e) requires court approval for any settlement of a class action to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  Courts examine the "negotiating process leading up to the settlement as well as the settlement's substantive terms," in light of "the judicial policy favor[ing] the settlement of class actions." *Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *9.  In the Second Circuit, courts examine both procedural and substantive fairness with the understanding that the law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotation marks omitted).  Here, both procedural and substantive considerations support approving the settlement class.

### A.   Procedural Fairness Considerations Support Approving this Settlement Class

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

If the settlement was achieved through experienced counsels' arm's-length negotiations, "[a]bsent fraud or collusion," "[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig*., No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007); *In re Top Tankers, Inc. Sec. Litig*., No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106, at **10-11 (S.D.N.Y. July 31, 2008) (same); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700

(E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability

of class and defense counsel to assess the potential risks and rewards of litigation; a presumption

of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length

negotiations between experienced, capable counsel after meaningful discovery.") (internal

quotation marks omitted).

      Here, the settlement was reached after Plaintiffs had evaluated Defendants' pay and time-

keeping records and other relevant policies and after extensive negotiations between the parties.

The parties enlisted the services of experienced mediator Carol Wittenberg of JAMS, and

attended two mediation sessions.  (*Id*.)  During the second mediation session, the parties resolved

all substantive issues, as set forth in the Settlement Agreement.  (*Id*. ¶¶ 9-10.)  These arm's-

length negotiations involving counsel and a mediator well-versed in wage and hour law raise a

presumption that the settlement they achieved meets the requirements of due process.  *See*

*Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13, *Wal-Mart Stores*, 396 F.3d at 116.

### B.    The Second Circuit's Standard for Examining Substantive Fairness of Class Action Settlements Favors Granting Final Approval

      More than three decades ago, the Second Circuit in *City of Detroit v. Grinnell Corp.*,

495 F.2d 448 (2d Cir. 1974), set forth the analytical framework for evaluating the substantive

fairness of a class action settlement.  This framework, known as the *Grinnell* factors, guides

district courts by setting out the following factors for determination: (1) the complexity, expense

and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of

the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5)

the risks of establishing damages; (6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness

of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness

of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495
F.2d at 463.  All of the *Grinnell* factors weigh in favor of final approval of this Settlement
Agreement.

       1.      **Litigation Through Trial Would be Complex, Costly, and Long**
                (***Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to
avoid significant expense and delay, and instead ensure recovery for the class.  "Most class
actions are inherently complex and settlement avoids the costs, delays and multitude of other
problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.
2d 164, 174 (S.D.N.Y. 2000).  In complex wage and hour litigation, involving both federal and
state statutory rights, protracted litigation is costly and burdensome, including motion practice
and potential appeals over class certification.  *See Gilliam,* 2008 U.S. Dist. LEXIS 23016, at *4.

This case is no exception to these general rules, with 437 Class Members and multiple
wage and hour claims under both federal and state statutes.  Although there has been some
discovery, (Neilan Dec. ¶¶ 5-7), additional discovery would be required to establish liability and
damages.   A complicated trial would be necessary, involving extensive testimony by
Defendants, Plaintiffs, and numerous Class Members, in addition to extensive expert testimony.
Preparing and putting on evidence on the complex factual and legal issues at such a trial would
consume tremendous amounts of time and resources for both sides, as well as requiring
substantial judicial resources to adjudicate the parties' disputes.  A trial of the damages issues,
even on a representative basis, would be costly and would further defer closure.  Any judgment
would likely be appealed, thereby extending the duration of the litigation.  This settlement, on
the other hand, makes monetary relief available to Class Members in a prompt and efficient
manner, and corrects the proposed violations by requiring substantial injunctive relief.

Therefore, the first *Grinnell* factor weighs in favor of judicial approval of the settlement.

      **2.**       **The Reaction of the Class Has Been Positive**
                      **(*Grinnell* Factor 2)**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Dale Global Techs. Corp.,* 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  Lack of objection to a settlement strongly favors judicial approval.  *See, e.g., In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *6.  Here, no Class Member has objected to the Settlement, and none has requested exclusion.  (Ex. H (Patton Dec.) ¶ 9.)  This response demonstrates that the Class approves of the results achieved on its behalf and supports judicial approval.  *See RMED Int'l, Inc. v. Sloan's Supermkts, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) ("The lack of class member objections . . . may itself be taken as evidencing the fairness of a settlement") (quoting *Ross v. A.H. Robbins, Inc.,* 700 F. Supp. 682, 684 (S.D.N.Y. 1988)); *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (only 13 objections out of class of 3,500 is a "strong indication" of fairness); *Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at **17-18 (S.D.N.Y. June 22, 2007) (absence of any class member objections weighs in favor approving the settlement).

      **3.**       **Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)**

Although preparing this case through trial would require many more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement.  The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to

justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (internal quotations omitted).

The parties' discovery here meets this standard.  As outlined above, Plaintiffs obtained and reviewed Defendants' relevant pay and tip records and policies and interviewed numerous class members to determine hours worked, wages paid, duties of individuals who received tips, and other relevant information before agreeing to resolve this case.  (Neilan Dec. ¶¶ 5-7.) Plaintiffs obtained supportive declarations from 7 workers.  (*Id*. ¶ 6.)  The parties also engaged in two mediation sessions during which they advocated their positions and engaged in a vigorous back and forth regarding their respective claims and defenses.

Based on the above, the parties were well-equipped to evaluate the strengths and weaknesses of the case.  These circumstances support a finding that the Settlement Agreement reached in this matter is both fair and reasonable.  *See Mohney*, 2007 U.S. Dist. LEXIS 46223, at **12-13; *Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

"Litigation inherently involves risks."  *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  *See also Velez,* 2007 U.S. Dist. LEXIS 46223, at **21-22.  In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of

success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotations omitted).

Although Plaintiffs' case is strong, it is subject to non-negligible risks as to liability and damages.  A trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and the NYLL, and the defenses available to Defendants, which would pose substantial risk as to both liability and damages.

Proving that Defendants improperly took a tip credit by failing to pay Plaintiffs at the proper minimum wage rate could be challenging for Plaintiffs.  Moreover, Plaintiffs may have particular difficulty showing that Defendants required Plaintiffs to pay a portion of their tips to ineligible employees.  Additionally, Plaintiffs may also have a difficult time showing that Defendants failed to pay workers for off-the-clock work performed before and after their scheduled shifts.  This might prove particularly difficult given that such hours were unrecorded in Defendants' timekeeping system.

While Plaintiffs believe that they could ultimately establish Defendants' liability on these claims, this would require significant factual development.  While Plaintiffs believe that their claims are meritorious, their counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates this uncertainty.  This factor weighs heavily in favor of final approval.

## 5.   Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present.  The Court has not certified the state law class yet, and the parties anticipate that such a determination would be reached only after intense, exhaustive briefing by both parties.

Defendants would likely argue that the number and variety of individual questions, such as Plaintiffs' hours worked, tips earned, and whether they performed off-the-clock work, preclude class certification.  Defendants would also likely argue that a class action is not a superior method to resolve Plaintiffs' claims and that a class trial would not be manageable.

Should the Court certify the Class, the parties acknowledge that Defendants would at some point challenge that certification and move to decertify it, thereby necessitating another round of extensive briefing.  They would also seek permission to file an interlocutory appeal under Fed. R. Civ. P. 23(f).  Risk, expense, and delay permeate such a process.  Settlement eliminates this risk, expense, and delay.  This factor favors final approval.

### 6.    Defendants' Ability to Withstand a Greater Judgment is Not Clear (*Grinnell* Factor 7)

Defendants' ability to withstand a greater judgment and their financial stability are in doubt, especially in the wake of the current financial downturn and its effect on the restaurant industry in New York.[4]  Even if Defendants could withstand a greater judgment, however, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."  *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. at 178 n.9).

### 7.    The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

---

[4]      *See* "Restaurants Stop Playing Hard to Get," Frank Bruni, Feb. 4, 2009, The New York Times, available at: http://www.nytimes.com/2009/02/04/dining/04note.html; "Putting Capital at the Top of the Menu," Amy Cortese, The New York Times, Feb. 1, 2009, available at: http://www.nytimes.com/2009/02/01/business/01sqft.html?emc=eta1; "Food Prices Expected to Keep Going Up," Andrew Martin, The New York Times, Nov. 27, 2008, available at: http://www.nytimes.com/2008/11/27/business/27food.html?emc=eta1 (all articles last visited May 10, 2009).

Even in the light of the best possible recovery, given the attendant risks, Defendants'
agreement to settle for a substantial amount, $710,000, supports a finding that it is fair and
reasonable.  The determination of whether a settlement amount is reasonable "does not involve
the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186
(quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178).  "Instead,
'there is a range of reasonableness with respect to a settlement – a range which recognizes the
uncertainties of law and fact in any particular case and the concomitant risks and costs
necessarily inherent in taking any litigation to completion.'"  *Id.* (quoting *Newman v. Stein*, 464
F.2d 689, 693 (2d Cir. 1972)).

"[T]here is no reason, at least in theory, why a satisfactory settlement could not amount
to a hundredth or even a thousandth part of a single percent of the potential recovery."  *City of
Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974).  "It is well-settled that a cash
settlement amounting to only a fraction of the potential recovery will not *per se* render the
settlement inadequate or unfair."  *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 628
(9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist.
LEXIS 11450, at **34-35 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement
over objections that the "best possible recovery would be approximately $121 million"); *Brooks
v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at **16-18
(S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery).

When settlement assures immediate payment of substantial amounts to Class Members,
"even if it means sacrificing 'speculative payment of hypothetically larger amount years down
the road,'" such settlements should be found reasonable under this factor.  *See Gilliam,* 2008

U.S. Dist. LEXIS 23016, at *5 (quoting *Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004)).

The $710,000 settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal.  Plaintiffs' counsel has determined that this case presents significant risks that militate toward substantial compromise.

Each Class Member will receive a payment based upon his or her number of weeks of employment with Defendants.  (Ex. C (Settlement Agreement) ¶ 3.4(B).)  The resulting average per-Class Member Settlement amount is at least $1,625 (before attorneys' fees and costs). (Neilan Dec. ¶ 21.)  Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Moreover, the settlement has substantial value for current (and future) employees of Defendants because of the significant injunctive relief set forth in the agreement.  Defendants are now obligated pursuant to a signed agreement to rectify past wage violations, including improper tip sharing, overtime payment, and uniform costs.  Such extensive injunctive relief supports a finding that the agreement has substantial value to the Class Members.

*        *        *

The *Grinnell* factors all weigh in favor of issuing final approval of the settlement. Because the settlement is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

**III.**   **Approval of the  FLSA Settlement is Appropriate under Federal Law**

Plaintiffs also request that the Court finally approve the settlement of their FLSA wage and hour claims.  The Settlement Agreement between the parties settles all wage and hour claims brought by the Plaintiffs , both under the NYSLL and the FLSA.   FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation.  29 U.S.C., § 216(b).  NYLL claims, on the other hand, are brought as standard opt-out class actions under general class-action provisions of Rule 23.  *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001).

When determining final approval of "hybrid" collective actions of state wage and hour class claims under NYLL and federal FLSA collective action claims, courts in this Circuit look to the fairness, adequacy, and reasonableness of the class settlement for both statutory frameworks by examining the *Grinnell* factors.  *See, e.g., Frank*, 228 F.R.D. 174; *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *8.  While district courts are under an obligation to evaluate the appropriateness of class certification for the state class claims under Rule 23, that certification standard is not appropriate for FLSA's § 216(b) opt-in procedure.  The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement.  *See McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  *Id.* at 1353-54.  If the

24

proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *see Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13.

In this case, the settlement was the result of contested litigation and arm's length negotiation.  (Neilan Dec. ¶¶ 8-9.)  Recognizing the uncertain legal and factual issues involved, the parties engaged in mediation with an experienced mediator and, after two rounds of negotiation, ultimately reached the settlement pending before the Court.  During the litigation and at the mediations, Plaintiffs and Defendants were both represented by counsel.  Accordingly, the Settlement Agreement resolves a contentious dispute under circumstances supporting findings of fairness and reasonableness, and is therefore appropriate for final court approval.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) certify as final the Class described above; (2) approve as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement; and (3) approve the FLSA settlement.

Dated: May 12, 2009
       New York, New York

                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                        /s/ Linda A. Neilan
                                        Linda A. Neilan (LN 4095)

                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz (JS 7989)
                                        Linda A. Neilan (LN 4095)
                                        Rachel Bien (RB 6919)
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone:  (212) 245-1000

25